### GOODSELL *v.* WESTERN UNION TEL. CO.

*(Superior Court of New York City, General Term.* March 4, 1890.)

**1. BREACH OF CONTRACT TO TRANSMIT NEWS.**

Plaintiff contracted with defendant, a telegraph company, to furnish news reports, which the latter agreed to transmit at certain prices, defendant to collect all money due plaintiff, and make him monthly statements and payments of any balance. Afterwards defendant's president wrote plaintiff that he would be charged higher prices, otherwise the services agreed upon would no longer be performed, and in a subsequent conversation stated to plaintiff that the contract was, as requested, finally repudiated by the company, but that he might take time, before making other terms, to make other arrangements with his subscribers. Afterwards plaintiff informed defendant that he could make no other terms, and insisted upon the original contract being carried out, but defendant refused, and thereafter failed to make monthly statements or further payments to plaintiff. *Held,* that such breach by defendant entitled plaintiff to abandon any further performance of the contract on his part, and to sue for damages. INGRAHAM, J., dissenting.

**2. ACTIONS—REAL PARTY IN INTEREST.**

Where a person does business under the name and style of the "National Associated Press, J. H. G., President," and under such style enters into a contract, he may sue personally for a breach thereof.

Appeal from judgment on report of referee.

Action by James H. Goodsell against the Western Union Telegraph Company. There was judgment for plaintiff, and both plaintiff and defendant appeal.

Argued before SEDGWICK, P. J., and FREEDMAN and INGRAHAM, JJ.

*George W. Miller*, for plaintiff. *Rush Taggart*, for defendant.

SEDGWICK, P. J. The complaint contains allegations of two causes of action for the breach of contract. It alleges that plaintiff made the contract with the Atlantic & Pacific Telegraph Company, and that afterwards the defendant, by agreement with the plaintiff, assumed and promised to perform the obligations of the Atlantic & Pacific Telegraph Company, contained in the contract. By that contract the plaintiff agreed to furnish, for transmission by the telegraph company over its lines, "news gathered" by the plaintiff, and the telegraph company agreed to transmit such news over its lines. The plaintiff agreed to pay for the transmission by the company of 8,750 words each day, on an average, the sum of $5,000 each month, and a further sum, if a greater number of words were transmitted. It was further agreed that, in case a less number of words were transmitted, an allowance or rebate upon the monthly sum of $5,000 were to be made; the yearly sum, however, to be not less than $50,000. The seventh clause provided that the collection of all moneys due or to accrue from papers or subscribers to the plaintiff shall be made by said telegraph company for the account of the plaintiff, and a full and detailed account shall be at all times duly kept by said telegraph company, which account shall always be open to the inspection of the plaintiff, and the same shall be furnished and rendered in due form by said telegraph company to plaintiff monthly, and payments of balances, if any, due by the telegraph company to the plaintiff, shall be made on or about the 15th day of each and every month. As a first cause of action, the complaint alleged that the plaintiff provided for transmission, from time to time, news reports; that defendant transmitted them, and proceeded "to collect from the different newspapers so served with plaintiff's news reports the various sums agreed between said newspapers and plaintiff to be

paid;" which sums so collected in each month exceeded largely the sum agreed to be paid by plaintiff to the telegraph company for such service, and that there remains due and payable to plaintiff from defendants, for money actually collected and received by defendant, and which should have been paid over to plaintiff by or before the 22d day of June, 1882, the sum of $32,000. For a first defense to this first cause of action, the answer, after admitting the incorporation of the defendant and of the Atlantic & Pacific Telegraph Company, and the nature of their business as alleged in the complaint, denied that the telegraph company or defendants made with the plaintiff the contract averred in the complaint; alleged that at the time the plaintiff held himself out to be engaged in the business of collecting and delivering news, as the representative and agent of a certain association called the "National Associated Press," of which he claimed to be the president, and was so known to the telegraph companies mentioned. Excepting matters before specifically admitted, it denied each of the allegations of the complaint, as to the first cause of action. For a second defense to the first cause of action, the answer admitted that the contract set out in the complaint, and therein averred to have been made by the Atlantic & Pacific Telegraph Company, was in fact made, but not with the plaintiff. It averred that the plaintiff at the time, etc., "claimed to be the president of the National Associated Press, and to represent the same; that he executed said contract as president; and that the Atlantic & Pacific Telegraph Company entered into said contract relying upon the truth of the representations of plaintiff; and that as late as January, 1882, about one year after the date of the alleged contract, plaintiff still insisted that the National Associated Press was a *bona fide* and lawful association or company, and that he was duly authorized to act for it; and that the said representations were not true; that the so-called National Associated Press never had any existence; and that plaintiff's claim to be its president, and to represent it in the negotiations, and as such president to execute contracts in its name, was wholly unauthorized, unlawful, and fraudulent, and calculated to deceive and injure the said Atlantic & Pacific Telegraph Company; and that the said contract, purporting on its face to be made between the Atlantic & Pacific Telegraph Company and the National Associated Press, was, by reason of the facts hereinbefore alleged, wholly illegal, fraudulent, and void." For the third defense to the first alleged cause of action, the answer averred that the defendant had duly accounted for and paid over all sums, as provided by the contract to the plaintiff.

Upon the trial, the defendants took the position that the contract was not made with the plaintiff personally, and asked the referee to find that the plaintiff, not being a party to the agreement, had not shown any right or title by which to enforce the same as against the defendant. The defendants did not ask a finding that the plaintiff represented that there existed a corporation named the National Associated Press, of which he, the plaintiff, was the president. It appeared by the testimony that there was an incorporation named the National Associated Press Company, Limited. But there was no request to find that it was intended by the use of the former name to describe the latter corporation; and there was no testimony which required the referee to find, if requested, that there was such an intention. In fact, the designation the "National Associated Press" was applicable to a fluctuating number of representatives of newspapers, who made separate contracts with the plaintiff as to the prices which they would pay plaintiff for the transmission of news by the defendants. They held no relations to each other. They or some of them may have claimed that they had a right to share in the profits the plaintiff would gain from his contract. He denied that they had such a right. The testimony showed they did not have the right. But, if the claim were valid, it would not follow that the contract in suit was not made with the plaintiff. And again, if the contract should be held to have been made with them,

the plaintiff being one of the parties in interest, they not being a legal incorporation or association, the defendants should have taken advantage by answer of the defect of parties plaintiff.   There being no natural or legal person, specifically named by the description of the party of the second part, unless it was the plaintiff personally, it was a matter of fact to find what or who was intended by that description.   And I think that the finding, as requested by defendants, was correct that the plaintiff did business under the name and style of the "National Associated Press, James H. Goodsell, President."   This finding referred to a time designated as on and after February 1, 1881, 10 days after the contract was made.   The evidence did not show that there was a different mode of doing business at the time the contract was made.   This subject has received attention on former appeals, and it has been held, as it is now held, that the plaintiff personally had a cause of action.

The remaining inquiry, as to the first cause of action, is whether the referee was justified in his assessment of damages by the testimony in the case. Upon this point the books of the defendant showed a balance in favor of the plaintiff amounting to $89,087.31.   The significance of this lies in the fact that it shows that, for whatever services had been actually rendered, the defendant had never charged the plaintiff with more than about $5,000 per month, including extras.   By reducing the said balance to $16,777.44, the referee must have allowed the defendant the maximum rate for the regular service under the contract, and for extra services, as follows:

Maximum price of $5,000 per month:

| | |
|---|---:|
| 15 months and 21 days, | $ 76,500 00 |
| All of Schedule S, | 6,367 48 |
| All of Schedule $Z\frac{1}{2}$, | 4,653 37 |
| Of Schedule X, the two items showing special arrangements, "Lawrence," | 630 00 |
| Showing "Auburn" Despatch, | 390 00 |
| Of Schedule $X\frac{1}{2}$, on same principle as X, "Auburn," | 120 00 |
| Of Schedule Y, all but "For Western Circuit," | 4,313 26 |
| Of Schedule $Y\frac{1}{2}$, | 68 45 |
| Total, | $ 95,272 56 |

With these allowances, the account stands as follows:

| | |
|---|---:|
| Collections by defendant from plaintiff's customers, as admitted by stipulation, | $157,800 00 |
| Payments made by defendant to plaintiff on account thereof, as admitted by stipulation, | 45,750 00 |
| Balance to be accounted for, | $112,050 00 |
| Credits to which the defendant is entitled for services and extra services, | 95,272 56 |
| | $ 16,777 44 |

Upon the whole case, and after the consideration of all the conflicting claims of both parties, I am of the opinion that the balance then struck allows to the defendant all that it can reasonably claim.   If there is any error in it of a substantial character, it is against the plaintiff, and in favor of the defendant; for it is by no means clear that the defendant can rightfully charge the maximum rate allowed to each and every month in addition to the extras allowed. The above statement of the account has been made by Judge FREEDMAN, and verified by me.   There was no error in the assessment of the damages on the first cause of action, and I proceed to the questions that relate to the second cause of action.

The second cause of action averred the making of the contract, and the assumption by the defendant of the obligation of the Atlantic & Pacific Tele-

graph Company. It further averred that on March 11, 1882, without any default on the part of the plaintiff, the defendant ceased, refused, and neglected to further carry out or perform said contract; that in the month of February, 1881, and in each month thereafter, the defendant had failed and neglected to render the plaintiff the account of collections, as provided in the contract, although often requested by plaintiff to render such statement; that on and before March 11, 1882, plaintiff often demanded of defendant that it should carry out said contract according to its terms, and that, by reason of said breaches of the said contract, the plaintiff had been greatly damaged. The answer in its first and second defenses to this second cause of action set up the same matter that was averred in the first and second defenses to the first cause of action, and as a third defense to the second cause of action denied that the defendant had at any time ceased, refused, or neglected to do any of the acts provided for in said contract, or had at any time refused or neglected to render accounts of the collections made by said defendant for said National Associated Press, or for the plaintiff. The answer, by way of counter-claim, alleged that there was due from plaintiff to defendant $15,000 for telegraphic services rendered by the latter to the former. On this second cause of action the referee found for the plaintiff in the sum of $30,000. On this appeal the learned counsel for the defendant argues that there was no proof that defendants were guilty of such a breach; that it entitled the plaintiff to recover damage under the second cause of action as for a breach of all the obligations of the defendant under the contract; and that, assuming there was a breach, it was of a part of the contract that did not involve the entire contract, and did not justify the plaintiff in treating the contract as ended, but called for a further performance or tender of performance by plaintiff of his obligations under that part of the contract that was not annulled by the alleged breach. This argument calls for the consideration of facts that will now be adduced from the findings or the testimony.

In March 11, 1882, the president of the defendant wrote to the plaintiff: "I am therefore directed by the subcommittee to whom this subject was referred to say to you that from and after this date you will be charged for the transmission of your press reports the same rate as that charged for other combination press reports in the respective territories in which said reports are handled under existing agreements, and that, unless such rate is paid or secured to be paid to this company, the service will be discontinued. The committee feel that you cannot regard this as short notice, since our free discussion of the subject for three months past has given you ample notice that it was our purpose and intention to increase the rates for your reports to that paid us by other customers for like services, and the committee feel that a decisive step in this direction has been already too long postponed." In fact, the plaintiff did not treat this as a present repudiation of the contract by the defendant, nor did the defendant press the plaintiff to immediate action upon the letter. In a conversation between the plaintiff and the president of the defendant, a little time after the letter, the president said to the plaintiff that the contract could not be considered any longer; that he must inform him finally that the contract was repudiated by the company; that they would not perform any more service under the contract; but that, if the plaintiff wished to carry on his business under a new contract in accordance with new terms, they would give him time to see what sort of an arrangement he could make with his customers. The plaintiff proceeded to negotiations with his subscribers until March 24th; when the president wrote a letter, giving new terms for a contract, and then continued: "I send you duplicates of this letter, one of which, returned to me with your acceptance and signature, will constitute the stipulations between yourself and this company, and a sufficient basis for settlement for the services." This was not treated as final, for the plaintiff, in a conversation had with the president a few days after the letter,

asked for more time to make the experiment, and that, if the company were to give more time, he would see what could be done, and then the president answered: "Go ahead, and see what you can do." · The plaintiff continued his efforts with his subscribers. About the middle of June, the plaintiff told the president that he could not make new arrangements, and the president said that the subject could not be reopened; that it was disposed of absolutely. The plaintiff then and at all times insisted that the contract should be carried out according to its terms. The disbursing officer of the company in June refused to pay the plaintff any more money. On June 20, 1882, the plaintiff notified the company that he had not waived and did not waive any right or claims under the contract, but insisted on the same; that he had always been and still was ready, able, and willing and offered to carry out the contract on his part. The notice ended: "My contract provides for monthly settlements, and I desire to call.your attention to the fact that no settlement has been had for several months, although the same has been promised from time to time." The defendants did not reply to this notice, excepting that the president said he would refer the matter to counsel, and did not make, or offer to make, any settlement. On the 22d June the plaintiff ceased to furnish any matter for transmission by the defendant. From March 11th to June 22d the plaintiff regularly furnished matter for transmission, and the defendant transmitted under the contracts, collecting the moneys as directed by the plaintiff. Indeed, by its answer and the testimony it gave, it took the position that it had fully performed down to the 22d day of June, and that there was no breach by it thereafter. It is not correct to say that it had fully performed down to June 22d. It had, in violation of the contract, omitted to make monthly statements and monthly payments. It may, however, be conceded that the plaintiff maintained the contract until June 22d, and that at that time his rights were confined to recover the sums due by the contract, and were not for damages for the loss of the contract. After June 20th, when the notice was given, the defendant was bound to perform its obligation to furnish monthly statements and make monthly payments. *Winchell* v. *Scott*, 114 N. Y. 640, 21 N. E. Rep. 1065. The referee might properly find that the notice of June 20th contained a demand of defendant that they should render the statements, and pay as provided. They did not do this.

While the mere omission to make one monthly statement or payment might not, under some circumstances, amount to a repudiation of the whole of the contract by the defendant, I am of opinion that where the omission is not made upon a ground which might not be applicable to future omissions, and is not caused by peculiar circumstances that might not again occur, but appears to be upon grounds that would apply to future omissions, a single omission is a present breach, that absolves the other party from the duty of considering the contract as continuing, and of performing or tendering performance thereafter. In the present case there was not a bare single omission, and nothing more. There had been earlier omissions, and there were facts and declarations by defendant's agent that gave peculiar significance to the omission of defendant after June 20th. The referee might rightfully consider that under the circumstances the defendant was called upon to make an answer to the notice, and that entire silence was an evidence in part of an intention not to perform the contract any longer. The obligation to render statements and make payments had an important, substantial reference to the object for which the contract was made by plaintiff. It held a direct relation to the main objects of the contract, and was not collateral and ancillary as the obligation passed upon in *Bogardus* v. *Insurance Co.*, 101 N. Y. 328, 4 N. E. Rep. 522. Nor was the omission to account and pay by defendants due to peculiar circumstances, and made under a mistake of the law of the case, and without any intent not to make future payments, as was the case of *Iron Co.* v. *Naylor*, 9 Q. B. Div. 648. In that case, the law was announced to be that

"non-payment on the one hand, or non-delivery on the other, may amount to such an act, or may be evidence for a jury of an intention wholly to abandon the contract, and set the other party free." The learned referee did not specifically find that the omissions were accompanied with an intent wholly to abandon the contract. No specific finding was asked by either party on the subject. But it was found, in the findings that related to the letters of March 11th and 24th, that the intention of the defendant, evinced by it to repudiate the obligations of the contract, existed to June 22d. The broad inquiry is whether, at the time in question, the one party, considering all the circumstances, took a position that properly led the other party to believe that there would be no further performance. If he did, the other party was not bound to tender further performance on his part. The testimony required the referee to find that on June 20th, or immediately thereafter, the defendants took the kind of position referred to, that they would not further perform. It is argued that there was an inconsistency between making the letters of March 11th and 24th a final and total breach, and allowing the plaintiff to recover as if under the contract, down to June 22d, and then again finding that a total breach occurred by reason of the defendant's omissions after June 20th. If there be an inconsistency in this, it has not resulted in any detriment to the defendant, for the damage to be given for the time between March 11th and June 20th would be the same, if claimed under and in performance of the contract, or if claimed for breach of the contract. *Howard* v. *Daly*, 61 N. Y. 362; *Everson* v. *Powers*, 89 N. Y. 527. But I do not find that there is any inconsistency. By the letters there was an absolute repudiation of the contract by the defendant, yet, while the defendant constantly refused to absolutely withdraw that repudiation, they consented that it should not be deemed to take effect for a certain time, and protracted that time, until the plaintiff declared that he could not make the arrangement for the making of which the time was given. Then the repudiation of the contract in the letter was definitely asserted. And this definitive repudiation was coincident with the total breach by defendant of omitting to furnish statement and make payment after the notice of June 20th. It was not incongruous with these facts to view the letters as containing a repudiation of the contract, and final so far as the result was concerned, but suspended for a time. It is not necessary to say more, because the learned referee examined fully and correctly the questions of the case. The plaintiff also appealed from the judgment. No exceptions taken by him on the trial call for a reversal. The judgment should be affirmed, without costs to either party. FREEDMAN, J., concurs.

INGRAHAM, J., (*dissenting.*) The question as to the right of the plaintiff to recover on the second cause of action presented on this appeal does not differ materially from that presented to the general term of this court, when the case was before us on the last appeal. See 55 N. Y. Super. Ct. 568. And a majority of the court then held that, upon the case as then presented, "the plaintiff failed to establish a total breach of the contract by the defendant before he [the plaintiff] voluntarily ceased business under the contract," and for that reason reversed the judgment in favor of the plaintiff. I cannot see that the case is at all changed by the evidence produced on the new trial, and, after a careful re-examination of the question, I am of the opinion that the plaintiff failed to prove a total breach of the contract by defendant, as alleged in the complaint as the foundation of the second cause of action; and that the plaintiff, by insisting that the contract was in force down to the 22d of June, 1882, and proceeding under it, elected to continue the contract in force. That he cannot proceed with the contract on the footing that it still exists, and also treat the acts of the defendant as an immediate breach, and that bringing an action upon the contract as an existing contract, and recovering

a judgment for the amount due under the contract down to the 22d of June, estopped the plaintiff from insisting that the acts of the defendant on the 11th of March constituted a breach.   My views on this question are fully expressed in the opinion delivered at the general term on the last appeal, and it is not necessary for me to state them here.   I wish simply to call attention to the allegations of the complaint and the report of the referee.   The plaintiff alleges for a second cause of action that, without any failure or default of the plaintiff on or about the 11th of March, 1882, the defendant failed, ceased, refused, and neglected to further carry out or perform said contract or agreement, and also alleges that thereupon and thereafter plaintiff often requested and demanded of defendant that it should carry out the said contract according to its terms, and plaintiff was always ready, able, and willing to perform the same on his part, and duly offered to so do; but the defendant continued to refuse so to do, or to carry on or perform the services provided to be performed for the plaintiff, except that defendant would perform a less service, and would transmit and deliver a less number of words, at a greatly increased price.   The foundation of this cause of action is thus founded upon a total breach of the contract by the defendant on the 11th of March, 1882.   No subsequent act of the defendant is alleged in the second cause of action for which plaintiff asks to recover, and to entitle plaintiff to recover on that cause of action he must prove that the defendant committed a breach of the contract on March 11, 1882.   As I understand the report of the referee, he does not find as a fact that the defendant did commit a total breach of the contract of March 11, 1882.   The referee finds that the defendant wrote certain letters to the plaintiff, and that the plaintiff sent a communication to the defendant between March 11, 1882, and June 20, 1882; and then by the tenth finding of fact that from the 3d of February, 1881, to and including the 22d of June, 1882, the plaintiff fully performed and fulfilled on his part all the terms and conditions of said contract, but the defendant did not perform all the terms and conditions of said contract on its part to be performed and fulfilled as the assignee and representative of the Atlantic & Pacific Telegraph Company, and said defendant failed, neglected, and refused to perform and fulfill the terms and conditions of such contract during said time.   The referee also found, at the request of the defendant, that after the writing of the letters of March 11th, March 24th, and May 10th the plaintiff continued to deliver his reports to the defendant for transmission, and the same were generally transmitted by the defendant, as delivered to it, to the several points mentioned in Schedule A, and to said other additional points as the defendant was requested to serve news reports under the contract set out in finding No. 4, up to the 22d of June, 1882, when the plaintiff ceased to deliver reports for transmission.   And the referee also finds that early and prior to the month of June the plaintiff, in conversation with the president of the defendant, informed the president that he was unable to carry out the arrangement of March 11, 1882, March 24th, and May 10th, and said to the president of the defendant "that he might as well stop the service;" and the said president replied "that he did not propose to stop the service."   On these findings of the referee I do not think that there was such a breach of the contract as would entitle the plaintiff to abandon the further performance of the contract on his part on the 22d of June, and then maintain an action for a breach of the contract against the defendant.   As before stated, the referee has failed to expressly find such a breach by the defendant, but has found facts which show that the defendant, down to the 22d of June, was carrying out the essential provisions of the contract, and had by its president expressly stated to the plaintiff that defendant did not propose to stop the service under the contract. As was said in *Bogardus* v. *Insurance Co.*, 101 N. Y. 335, 4 N. E. Rep. 522: "It is only when the non-performance is of a condition precedent, or where such party has wholly refused to perform, or has wholly disabled himself from

completing a substantial performance, that the other party is relieved from performance, or a tender thereof." I do not think, therefore, that the plaintiff can recover on the second cause of action, and for that reason the judgment should be reversed. As to the right of plaintiff to maintain this action for the recovery of the amount due under the contract, I consider that as settled by former adjudications of this court.