# CHARLESTON.

Bare, Adm'r. etc. v. Victoria Coal & Coke Co.

Submitted January 13, 1914.　Decided February 3, 1914.

1. Mines and Minerals—*Breach of Contract to Mine Coal—Declaration—Sufficiency on Demurrer.*

In an action by a contractor against the owner to recover damages for breach of a contract to mine coal at a stipulated price per ton and stipulated sums per lineal yard in addition for driving entries and break-throughs, a declaration charging that while plaintiff was engaged in performing the contract on his part, and according to the terms thereof, and had furnished defendant a statement of coal mined and the number of yards of entry work and break-throughs, and showing the amount due him, defendant refused to pay him for such yardage, or to carry out the contract on its part, and so conducted itself in other ways as to prevent plaintiff from further performing his part, and counting for gains and profits, is good on demurrer, as stating a breach by defendant of a material part of the contract and entitling him to treat the contract as at an end, and to an immediate action for damages sustained. (p. 634).

2. Contracts—*Breach—Election of Remedies.*

The general rule in such cases is "that where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies. He may treat the contract as rescinded, and recover on quantum meruit so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover under the contract; or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized, if he had not been prevented from performing. In the latter case, the contract would be continued in force for that purpose." (p. 635).

3. Same—*Breach—Excuse for Nonperformance.*

The general rule, however, is that the renunciation of the contract by one party, which will excuse performance by the other, must be unequivocal and absolute, must deal with the entire performance of the contract, or must relate to such material part thereof as to prevent performance by the other; a slight breach, or a breach of an immaterial part by one party will not excuse performance by the other. (p. 636).

4. Evidence—*Admissibility—Testimony Taken on Former Trial.*

Evidence taken down by a shorthand reporter on one trial and

certified by him and covered into a bill of exceptions or certificate of evidence by the court, may, on the death of the witnesses, be read as a deposition on a subsequent trial of the same case, involving the same issues. (p. 637).

5. DAMAGES—*Measure—Breach of Contract to Mine Coal.*
   In an action by such contractor to recover damages for breach by defendant of a contract to mine coal, preventing further performance of the contract by plaintiff, and counting for gains and profits thereon, the measure of damages, according to the general rule, is the difference between the cost of performance and the price stipulated in the contract. (p. 639).

6. SAME—*Breach of Contract to Mine Coal—Evidence—Expenditures.*
   Where in such action plaintiff counts for gains and profits he may, as an element of damages, covered by gains and profits, prove what he has in good faith laid out and expended on the faith of the contract, including the value of his own services. If he goes further than this he will be subject to the rules of law as to the character of the profits which may be then claimed. (p. 639).

7. CONTRACTS—*Breach of Contract—Right of Action.*
   Point 8 of the syllabus in *Bannister* v. *Coal Co.*, 63 W. Va. 502, re-affirmed and applied. (p. 641).

8. NEW TRIAL—*Grounds—Erroneous Findings.*
   Where on special interrogatories the jury makes separate findings of items making up their general verdict, some of which are and others are not recoverable in the action, unless plaintiff enters a remittitur for such parts or items not recoverable, the court cannot on motion of defendant reduce the verdict by the amount thereof, but on defendant's motion should set aside the verdict and award him a new trial. (p. 642).

Error to Circuit Court, Fayette County.

Action by B. E. Bare, administrator, etc., against the Victoria Coal & Coke Company. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*C. R. Summerfield,* and *Dillon & Nuckolls,* for plaintiff in error.

MILLER, PRESIDENT:

This is the same case, but upon an amended declaration, which we had in *Bannister* v. *Victoria Coal & Coke Co.*, 63 W. Va. 502. The substance of the original declaration, and

of the several counts thereof, is set forth in the opinion in that case. The contract there pleaded was an alleged modified one with mutual promises for mining coal by plaintiff for defendant. The breach, by defendant, alleged, as excusing complete performance by plaintiff, was "that while the plaintiff was engaged in performing the said contract, to-wit, on the ———— day of December, 1901, the defendant refused to furnish any yardage where the coal from said mines could be hauled and received by the defendant, and the defendant would not permit the plaintiff to go on with the work and performance of said contract, but so conducted itself in and about the operation of the said mines as to stop the plaintiff from doing said work, and compelled the plaintiff to cease work on said contract and to leave the said premises, whereby the plaintiff hath lost and been deprived of divers gains and profits which might and otherwise would have arisen and accrued to him from the mining of said coal from the area of land above described under the terms of the agreement."

As the contract pleaded contained no agreement to provide the kind of yardage, a breach of which was so alleged, and the general charge in connection with the specific one, that defendant prevented performance by plaintiff, was so indefinite and uncertain as by the rule of good pleading was insufficient to give notice to defendant, we were obliged to hold, and did hold, the fourth or special count of the declaration bad on demurrer.

Said fourth count as amended charges the breach by defendant, excusing further performance by plaintiff, as follows, "that while the plaintiff was engaged in performing said contract on his part according to the terms thereof, to-wit, on the ———— day of December, 1901, and had furnished the defendant a statement of work done under said contract, and coal mined, and also a statement of the number of lineal yards of entry work, and also of break-through or lateral entry work, showing the amounts due from the said defendant to the said plaintiff according to the terms of said contract, that the said defendant refused to pay the amounts so shown to be due by it to the said plaintiff, for work done

in driving entries and break-throughs or lateral entry work or any part thereof, and denied its liability to pay the same under the terms of said contract, and refused to carry out said contract on its part, and so conducted itself in other ways as to prevent the plaintiff from carrying out said contract on his behalf whereby the plaintiff hath lost and been deprived of divers gains and profits which might and otherwise would have arisen and accrued to him from the mining of said coal from the area of land above described under the terms of the agreement aforesaid."

It is apparent that the "yardage" of the original declaration is a very different kind of "yardage" from that covered by the amended declaration. In the original declaration it was a place of storage for the coal mined; in the amended count it is the price per lineal yard for entry work and break-throughs or lateral entry work, for which, by the modified contract, both the original and amended declarations allege defendant promised to pay plaintiff at the rate of "$1.50 per lineal yard for entry work, and 60 cents per yard for break-through or lateral entry work."

On the demurrer to the amended declaration and each count thereof, we hold, the general counts, the same as in the original declaration, good, as formerly. As to the fourth or special count, we have the new question presented, namely: Was plaintiff, on his election, discharged from complete performance of the contract on his part, by the breach of defendant to comply with its promise to pay him for the "yardage" as alleged? If he was, this count is good, otherwise it is not, and it also would be bad on demurrer.

The rule, which seems well established by judicial decisions, and adopted by text writers, is "that where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies. He may treat the contract as rescinded, and recover on quantum meruit so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover under the contract; or he may treat the repudiation as putting an end to the contract for all purposes of

performance, and sue for the profits he would have realized, if he had not been prevented from performing. In the latter case, the contract would be continued in force for that purpose.'' 3 Elliott on Cont., sections 2026 and 2030, citing *Lake Shore & M. S. R. Co. v. Richards*, 152 Ill. 59, 30 L. R. A. 33; *Louisville Packing Co. v. Crain*, 141 Ky. 379, 132 S. W. 575; 3 Page on Cont., section 1434. And besides our own cases cited in the former opinion in this case supporting this doctrine, see, also, *Ellison, Son & Co. v. Grocery Co.*, 69 W. Va. 380, and cases cited therein.

To bring a case within this rule, however, the authorities generally agree that the renunciation or repudiation of the contract by one party, which will excuse performance by the other, must be unequivocal and absolute, and must deal with the entire performance to which the contract binds the other party, or must relate to such a material part thereof as to prevent performance by him, and that a breach of an immaterial part or a slight breach not going to the whole contract or such material part as to prevent performance, will not excuse the other party. *Ellison, Son & Co. v. Grocery Co.*, *supra*. One case holds that default by one party to a contract, bound to furnish the money to carry out the contract, thereby preventing performance by the other party, will excuse performance by the latter. *McCreery v. Green*, 38 Mich. 172. Other decisions hold that the failure of one party to make the payments on the price, for which he is bound by the contract, will excuse performance by the other party and give him immediate right of action for the value of the labor performed, material furnished, or at his election to treat the whole contract as at an end and sue for damages or loss of profits. *Landry v. Peytavin*, (La.) 7 Mart. (N. S.) 165; *Yacht & Power Co. v. Busch*, 143 F. R. 929, 75 C. C. A. 109; *Lawrence Bros. v. Heylman*, 184 N. Y. 531, 76 N. E. 1098; *Grand Rapids & B. C. R. Co. v. Van Dusen*, 29 Mich. 431; *Fitzgerald v. Hayward*, 50 Mo. 516; *Goodsell v. Western U. Tel. Co.*, 9 N. Y. Supp. 425; *Cunningham v. Massena Springs & Ft. C. R. Co.*, 63 Hun. 439; *Raabe v. Squier*, 148 N. Y. 81, 42 N. E. 516; *Monroe v. Northern P. Coal M. Co.*, 5 Ore. 509; *Bean v. Bunker*, 68 Vt. 72, 33 Atl. 1068. In the recent case of *Franklin v. Lumber Co.*, 66 W. Va. 164, 169, Judge

WILLIAMS says: "It was not error to refuse defendants' instruction No. 6. To constitute such a breach of an entire contract as will relieve the other contracting party from performance, it must be a breach of a material provision of the contract." We think our decisions commit us to the rule, that where there is a breach by one party of a material part of an entire contract, in payments to be made, or otherwise, and operating in a material way to prevent performance by the other party, the latter has his several elections under the rule above stated.

Measured by this rule, has plaintiff stated a cause of action under the contract pleaded? We are disposed to hold that he has. True the breach alleged does not go to the entire consideration for the contract on his part. It is not alleged that when plaintiff presented the statement for the coal mined and for the yardage for entry work and break-through or lateral entry work, defendant refused to pay for the coal mined, but only that it refused to pay for the yardage, but this averment is followed by the general allegation that defendant also denied its liability to pay for the same, and refused to carry out said contract on its part, and so conducted itself in other ways as to prevent performance by plaintiff. If defendant's contract was as alleged, we think the breach assigned was of such a material part of the contract on its part, as entitled plaintiff to his election to treat the contract as repudiated or abandoned by the defendant. We think the averments of the declaration equivalent to a charge that the refusal of defendant to pay for the yardage operated to disable and prevent performance of the contract by plaintiff. For these reasons we hold the declaration good and that the demurrer was properly overruled.

Another point of error insisted upon is that the trial court, over defendant's objection, permitted plaintiff to read to the jury the evidence of Thomas Bannister and Charles Gwinn, both then deceased, as the bill of exceptions describes it, "taken down, transcribed and certified by the stenographer in the case at its former trial." It is urged that there is nothing in the record showing that this was the evidence taken down at the former trial by the court stenographer and

properly certified by the court, or whether it was taken from some other paper.

We know judicially · from this record that there was a former trial, and that the case was formerly in this court upon bills of exception and certificate of evidence, certified by the court, and without something in the record showing the contrary, we think we must assume that the evidence of these witnesses, so admitted, was the evidence so certified and made a part of the record on the former trial. If not, defendant's counsel would undoubtedly have made its exceptions more specific and made the record show the actual fact. True we held in *Tracy's Adm'x.* v. *Carver Coal Co.*, 57 W. Va. 587, that evidence taken down and transcribed by a shorthand reporter is no part of the record and can only be made so by a proper bill of exceptions, but as stated, we know from this record that there was a bill of exceptions in this case certifying the evidence on the former trial. Serial section 3693, chapter 114B, Code 1906, makes the shorthand notes of the reporter official, and the best authority in any matter of dispute, and provides that ''a copy of the same made as hereinafter provided, shall be used by the parties to the cause in any further proceedings, wherein the use of the same may be required.'' We do not mean to intimate the opinion that unsupported by the oath of the reporter a transcript of his notes of the evidence of witnesses on a former trial, could be read, over objection, but where those notes have been transcribed and the testimony covered into a bill of exceptions, certified by the court, we think the testimony so certified the equivalent of depositions taken, and admissible on a subsequent trial of the same case, by analogy if not otherwise to the rule prescribed in section 36, chapter 130, Code 1906. So we overrule this point.

The rejection of defendant's instructions to the jury numbers 1, 3, 4, 5, 6, and 7; its motion for a judgment in its favor, non obstante veredicto; its motion to set aside the verdict as wholly unwarranted by the evidence, and award it a new trial, and its several motions to reduce the verdict by the amounts covered by the second and third of the special findings upon special interrogatories submitted, and its motion in arrest of judgment, all decided adversely to defendant.

and relied on here as errors, all raise substantially the same questions.

The special interrogatories and the answers thereto by the jury were as follows: "1st. How much do you find the defendant owes plaintiff's intestate on account of yardage? Ans. $6.00. 2nd. What sum do you find for labor performed in preparing or getting the mine and property ready for operation under the contract? Ans. $899.75. 3rd. What sum do you find for money spent in getting the mine in condition or getting ready for work? Ans. $250.00." The general verdict returned by the jury is as follows: "We, the jury, find for the plaintiff, and assess his damages at $1155.75, with legal interest thereon from the 1st day of January, 1902, which interest amounts to $622.76, which principal and interest amounts to $1778.51."

The first question presented on these adverse rulings is, was plaintiff limited in his right of recovery to the amount due for yardage at the time he made demand for the same and defendant declined to pay? If the contract was in fact modified as alleged in the declaration, and there had been no controversy between the parties on the question of modification, then, as we have held on the demurrer, on a breach by defendant of this material part of the contract as modified, plaintiff was entitled, at his election, to treat the contract as ended, and sue for damages as he has done, and would not be limited to the bare amount then due upon the contract, but might recover profits measured by the difference between what it would have cost to perform the contract and the contract price. *Dillon & Harrison* v. *Suburban Land Co.*, 73 W. Va. 363, 80 S. E. 471; *Thomas & Moran* v. *Kanawha Valley Traction Co.*, 73 W. Va. 374, 80 S. E. 476. The special count of the declaration counts for gains and profits, and it is alleged therein that plaintiff expended large sums of money, to-wit, the sum of $5,000.00, in preparing the mines to get out the coal in accordance with the contract. In *United States* v. *Behan*, 110 U. S. 338, 345, it is said, applicable to the case here, "the primary measure of damages is the amount of the party's loss; and this loss, as we have seen, may consist of two heads or classes of damage—actual outlay and anticipated profits. But failure to prove profits will not pre-

vent the party from recovering his losses for actual outlay and expenditure. If he goes also for profits, then the rule applies as laid down in Speed's case, and his *profits* will be measured by 'the difference between the cost of doing the work and what he was to receive for it,' &c. The claimant was not bound to go for profits, even though he counted for them in his petition. He might stop upon a showing of losses. The two heads of damage are distinct, though closely related. When profits are sought a recovery for outlay is included and something more. That something more is the profits. If the outlay equals or exceeds the amount to be received, of course there can be no profits." In a subsequent paragraph the court in the same case says: "But when he elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is, the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services. If he chooses to go further, and claims for the loss of anticipated profits, he may do so, subject to the rules of law as to the character of profits which may be thus claimed. It does not lie, however, in the mouth of the party, who has voluntarily and wrongfully put an end to the contract, to say that the party injured has not been damaged at least to the amount of what he has been induced fairly and in good faith to lay out and expend (including his own services), after making allowance for the value of materials on hand; at least it does not lie in the mouth of the party in fault to say this, unless he can show that the expenses of the party injured have been extravagant, and unnecessary for the purpose of carrying out the contract." Some of the authorities sustaining these propositions are cited without comment in the opinion of the court, and are here referred to.

If these propositions propound the law correctly it was competent for the plaintiff to prove as an element of damages what he had necessarily laid out and expended in preparation for the work, and there was evidence admitted to support the special findings of the jury on this question. There was some evidence offered, and some that was admitted, tending to show what plaintiff's profits would have been on execution of the contract, but this evidence may have been too remote

and speculative on which to found a substantial verdict, and it is evident that the jury found nothing for plaintiff on this score, and defendant has no reason to complain of the rejection of instructions which may have been intended to deny plaintiff recovery for loss of profits. And if there had been no controversy between the parties as to the fact of the modification of the contract the verdict could not be disturbed on the ground that the special findings of the jury were inconsistent with the general verdict, or that these amounts as so found did not constitute proper elements of damages for the breach of the contract as laid and attempted to be proven.

But the vital question in this case is whether on the merits plaintiff was entitled to treat the contract as ended upon the alleged breach thereof by defendant, and to sue for damages for loss of profits? On the former hearing we decided, 8th point of the syllabus, that: ''Where one of the parties to a contract reduced to writing, after partial performance by him, claims there was a subsequent oral modification thereof, denied by the other party, such denial will not amount to a renunciation of the actual contract and excuse performance on the part of the other party, so as to give immediate cause of action as for a breach of the contract.'' And upon the principle enunciated in *Armstrong* v. *Ross,* 61 W. Va. 38, we stated the law to be, that ''In case of such disagreement between the parties as to what the contract really was, the remedy of the plaintiff was upon the contract as he claimed it, after performance, or partial performance, when payments became due. After judgment in his favor upon such issue, further refusal of the defendant to perform the contract as thus determined might put him in the position he has assumed in this case; but that question is not now before us, and we merely moot it.''

The question of the fact of the modification of the contract, had not been adjudicated at the time plaintiff elected to treat the contract as broken and brought this action, and there seems to have been an honest disagreement and controversy between the parties upon this important matter. We cannot hold, therefore, that the plaintiff had the legal right to

treat the contract as ended and to sue defendant, and we hold that his act and his action were both premature.

It follows, therefore, that plaintiff was not entitled to recover the amounts covered by the second and third special findings of the jury and included in the general verdict, and that because so included the verdict on defendant's motion should have been set aside and a new trial awarded, unless on defendant's motion to reduce the verdict by those amounts, and a remittitur entered by plaintiff to that extent, the verdict was so corrected and judgment entered for the amount of the yardage, as to which the verdict might have stood, upon the evidence. *Rodgers* v. *Bailey*, 68 W. Va. 186. Without such remittitur the motion of defendant to reduce the verdict should not have prevailed, but a new trial on its motion should have been awarded. Plaintiff, notwithstanding his own breach of the contract, may have been entitled to recover for the value of the work done up to the date of the breach.

For these reasons we reverse the judgment, set aside the verdict, and award defendant a new trial.

*Reversed and Remanded.*