F. F. MCINTOSH *et al.* v. J. B. VAIL *et al.*

(No. 9720)

F. F. MCINTOSH *et al. v.* J. B. VAIL *et al.*

(No. 9721)

Submitted September 11, 1945. Decided October 30, 1945.

*Perry Emmet O'Brien* and *S. P. Bell,* for appellants.
*Brown, Jackson & Knight, W. Goodridge Sale, Jr.,* and *C. W. Moxley,* for appellees.

RILEY, JUDGE:

This interpleader suit, brought in the Circuit Court of Jackson County by F. F. McIntosh and E. W. Grimm, partners doing business as McIntosh and Grimm, against J. B. Vail et al., was heretofore appealed to this Court by R. B. Stone, Administrator of J. M. Stone, deceased, and the heirs of said J. M. Stone (Appeal No. 9471, 126 W. Va. 395, 28 S. E. 2d 607), and by S. T. Starcher

(Appeal No. 9472, 126 W. Va. 355, 28 S. E. 2d 95). In . Appeal No. 9471 this Court reversed the decree of the trial court and remanded the cause to the circuit court. From a final decree entered on the remand, awarding to the administrator of J. M. Stone and to the heirs of C. T. Gates, their personal representatives, or assigns, the funds in controversy in Appeal No. 9471 and held by the interpleaders, F. F. McIntosh and E. W. Grimm, partners as aforesaid, the appellee, Adele Clerc Gardner, and the appellees, The A. M. Carson Store Company, Waid E. Carson and Bessie E. Staats, appeal.

As stated in the former opinion in Appeal No. 9471, this suit involves two leaseholds, one of ninety-four acres and one of 102 1/2 acres, to each of which there are two sets of conflicting interests. The instant appeals are concerned only with the tract of ninety-four acres.

A partial statement of facts contained in the opinion rendered on the former Appeal No. 9471 will be stated substantially verbatim:

On November 2, 1899, Mary E. Clerc conveyed to J. M. Stone, C. T. Gates, and R. L. Rogers, a tract of land containing ninety-four acres, situate in Jackson County. The language of that deed, which furnishes the basis of the instant controversy is as follows:

> "First party also expressly reserves from the sale herein made, the oil and gas in and under all the lands herein conveyed and also the exclusive right of operating thereon for oil and gas, together with the rights of way necessary for such operations and the right to lay necessary pipes over and to erect tanks thereon and to take and use water from said premises, and also the right to erect and remove, at any time, all property placed thereon by said first party, or her assigns, in prospecting for or producing oil or gas. But if oil or gas is found in paying quantities on said lands, first party and her assigns shall yield and pay to parties of second part or their assigns, one full sixteenth (1/16) of the oil and gas produced and marketed from said lands."

The grantees paid the sum of five hundred dollars cash, and the grantor reserved a "vendor's lien on the lands herein conveyed" to secure the unpaid purchase money. Thereafter Rogers granted to Stone and Gates his undivided one-third interest reserving "the oil and gas and privileges mentioned and reserved in * * * [Mary E. Clerc's conveyance], but hereby conveys to second parties all of the interest therein that may accrue to said" Rogers. On November 20, 1900, Stone and Gates and their respective wives conveyed the ninety-four-acre tract to W. E. Parish under a general warranty; and under date of June 29, 1903, W. E. Parish conveyed a portion of that tract to one Annie M. Miller. Neither of the two last deeds mentioned any oil, gas or mineral exception or reservation.

In October, 1903, Stone and Gates as individuals and partners were adjudged bankrupts in the District Court of the United States for the Northern District of West Virginia. During the following month Mary E. Clerc applied to the referee in bankruptcy for permission to institute a suit in the Circuit Court of Jackson County, to enforce her rights under the vendor's lien retained by her in the deed to Stone, Gates and Rogers. The answer of The A. M. Carson Store Company, Waid E. Carson and Bessie E. Staats avers that the trustee in bankruptcy for each of the adjudicated bankrupts declined to accept any right, benefit or interest of said J. M. Stone in said covenant and that said property was abandoned and reverted to said J. M. Stone. Mary E. Clerc thereafter instituted a vendor's lien suit and Stone, Gates and Rogers, as well as the trustees of the respective estates of Stone and Gates as bankrupts, were made parties defendant, but Stone and Gates were dismissed from said suit prior to any adjudication of their interests arising by reason of the covenant herein under consideration. According to the answers of The A. M. Carson Store Company, Waid E. Carson and Bessie E. Staats, Mary E. Clerc was authorized by an order of the referee in bankruptcy "to institute such actions at law or suits

in equity as she may deem necessary to protect her rights and interests in the" ninety-four-acre tract of land. The answer of the administrator and heirs of J. M. Stone avers that in the vendor's lien suit the decrees ordering sale provided as follows: "But in such sale the oil and gas rights reserved by the plaintiff in said deed shall be reserved and preserved to her to the same extent"; that the commissioners in reporting the sale of the ninety-four-acre tract reported that it was "subject to the oil and gas rights of the plaintiff and rights of way reserved to her"; that the decree of August 3, 1904, directing the execution of the deed provided: "but there shall be reserved in said deed the oil and gas rights to plaintiff reserved to her by said decree of sale"; and that the deed from the special commissioners to The A. M. Carson Store Company, purchaser of the property at the judicial sale in the vendor's lien suit, provided that: "The same reservation as to certain roads or rights of ways and of oil and gas in or under said land and the developments theretofore contained and reserved in said deed of Mary E. Clerc to said Stone, Gates and Rogers dated November 2, 1899, are hereby expressly reserved."

Mary E. Clerc died intestate in 1923 leaving surviving her as her only heir at law her daughter, Adele Clerc Gardner. On June 1, 1937, Adele Clerc Gardner leased the ninety-four-acre tract for oil and gas purposes to the interpleading plaintiffs, F. F. McIntosh and E. W. Grimm, partners. On March 25, 1941, before this suit was brought and any drilling was begun, plaintiffs and some of the claimants in both appeals entered into an agreement consolidating the ninety-four-acre tract in controversy, and the one hundred and two and one-half-acre tract, as a unit aggregating one hundred ninety-six and one-half acres for the purpose of the more economical operation for oil and gas, which agreement provided, in effect, that the royalties be shared proportionate to the ownership interests in both tracts upon production of oil and gas in paying quantities.

Upon the former Appeal No. 9471, this Court held

that the circuit court erred in holding that the grantor's covenant to "yield and pay to the parties of second part or their assigns, one full sixteenth (1/16) of the oil and gas produced and marketed from said lands" ran with the land; that the Mary E. Clerc deed to Stone, Gates and Rogers effected *eo instante* a severance of the oil and gas from the surface; and that the covenant in question was personal and not real.

On this appeal, the appellants, The A. M. Carson Store Company, a corporation, Waid E. Carson, and Bessie E. Staats predicate their claim to the funds in issue upon the title which The A. M. Carson Store Company obtained at the judicial sale in the vendor's lien suit. The appellant, Adele Clerc Gardner, the only heir of Mary E. Clerc, takes the position on this appeal that The A. M. Carson Store Company, Waid E. Carson and Bessie E. Staats, are precluded by the holding of this Court on the former appeal that the covenant to yield and pay one-sixteenth of the oil and gas did not run with the land and that the appellees, the administrator and heirs of J. M. Stone, as well as the heirs of C. T. Gates, should not prevail because the grantees in the Mary E. Clerc deed of May 2, 1899, repudiated the covenant by defaulting in the payment of the purchase price of the land conveyed, thereby requiring the grantor, Mary E. Clerc, to obtain payment through the vendor's lien suit, and that said grantees were guilty of fraud in that they breached the contract of payment, removed timber from the land, and rendered themselves unable to perform by filing a petition of voluntary bankruptcy. The appellees, the administrator and heirs of J. M. Stone, assert that the circuit court did not err in decreeing that Reuben B. Stone, as administrator of the estate of J. M. Stone, deceased, and the heirs of C. T. Gates, their personal representatives and assigns, were entitled to the funds in question now held by the interpleading plaintiffs. These appellees say that The A. M. Carson Store Company and others are precluded by the former holding of this Court, and that the appellant, Adele Clerc Gardner, cannot prevail on the

theory that the covenant in question was repudiated by the default in the payment of Stone and Gates, because it is asserted that such default was only a breach of the agreement of Stone and Gates to pay the purchase price for the land conveyed, but if such default should be considered a repudiation of the covenant, Mary E. Clerc did not elect to rely upon it, but on the contrary she relied upon the provisions of her deed and asserted her rights in the vendor's lien reserved therein and thereby collected all of the balance of the purchase price for the property and Adele Clerc Gardner, her heir, is bound by her election in this regard. They deny fraud and say they come into this suit with clean hands.

Prior to the entry of the final decree of November 18, 1942, entered on former Appeal No. 9471, the circuit court entered a decree on November 14, 1942, in which it decreed to the appellant, Adele Clerc Gardner, the sum of $7,429.28 "being one-half of the royalties accruing * * * as well as one-half of the royalty accruing from said operations thereunder", as the plaintiffs, McIntosh and Grimm, may receive the same. There was no appeal from this decree by Adele Clerc Gardner or the administratrix of her mother's estate. Counsel for the appellees take the position that the decree is final so far as Adele Clerc Gardner is concerned, and that she cannot further assert any claim either on the remand or on this appeal. The decree may be final in that it determined Adele Clerc Gardner's right to a one-sixteenth of the oil and gas, that is one-half of the royalty under the lease. It did not, however, determine the ownership of the funds derived from the one-sixteenth of the oil and gas in controversy in this suit. In that sense the decree is interlocutory, and said appellant is not precluded from asserting her claims in her answer and cross bill and on this appeal.

The covenant contained in the Mary E. Clerc deed is not a *nudum pactum*. The deed, in our opinion, should be read and considered as a whole. The consideration recited therein, all of which Mary E. Clerc received by

cash payment and from the proceeds derived in the vendor's lien suit, underlies and supports both the grantor's personal covenant and the conveyance of the land itself. Mary Clerc Gardner expressly takes this position in her brief. In fact no party to this suit denies on this appeal that the covenant was initially valid and such issue was not raised by the pleadings.

After the remand Adele Clerc Gardner filed her answer and cross bill, in which she asserted her claim to the funds in controversy, and The A. M. Carson Store Company filed its petition asserting its claim to the funds and denying Adele Clerc Gardner's right to assert her claim under her answer and cross bill. The answer and cross bill asserts that the appellees have lost their rights under the Mary E. Clerc deed and have been guilty of fraud by their failure to pay the balance of the purchase price and in removing and selling timber from the land and then having themselves declared voluntary bankrupts. It prays that said appellant may be decreed to be the owner of and entitled to all of the gas well royalties and rentals accruing and apportioned from said ninety-four-acre tract of land; that the administrator and heirs of J. M. Stone, deceased, may be decreed to own no interest in said gas well rentals; and that they may be adjudged to have no valid claim against her in her own right or against her as administratrix of the estate of her mother, Mary E. Clerc, deceased, or against said estate by reason of the deed of November 2, 1899. Thus it may be seen that Adele Clerc Gardner's position on this appeal is to a large extent centered upon the propositions: First, that the covenant "to yield and pay one full sixteenth (1/16) of the oil and gas", though initially valid was destroyed by its breach; and, second, whether destroyed or not the appellees are not entitled to have any right under it because of their failure to pay the purchase price, thereby requiring Mary E. Clerc to collect the same in a vendor's lien suit, which coupled with the removal of the timber and the adjudication of Stone and Gates in bankruptcy, was such fraud as would render

appellees' hands unclean. The answer to these positions seems apparent to us. In the first place the breach of the covenant to pay did not, in a strict sense, constitute a repudiation of the covenant, and even if it did, Adele Clerc Gardner's ancestor elected not to rely upon it. She asserted her rights under the reservation of the vendor's lien, and in the vendor's lien suit collected all that she was entitled to have under the express provisions of the Clerc deed. Her counsel rely upon the cases of *Bare* v. *Victoria Coal & Coke Co.*, 73 W. Va. 632, pt. 2 syl., 80 S. E. 941; and *Atlantic Bitulithic Co.* v. *Town of Edgewood*, 103 W. Va. 137, 137 S. E. 223. This Court stated in point 2 of the syllabus in the *Bare* case:

"The general rule in such cases is 'that where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies. He may treat the contract as rescinded, and recover on quantum meruit so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover under the contract; or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized, if he had not been prevented from performing. In the latter case, the contract would be continued in force for that purpose.' "

In the situation in which Mary E. Clerc found herself when Stone and Gates failed to pay the balance of the purchase price, she elected to rely upon her deed and not upon the alleged repudiation thereof, and having done so she or her heir cannot now say that the grantor's covenant was destroyed.

Nor do we think that Adele Clerc Gardner's second position is tenable. A breach of a contract based as it was upon an inability to pay is not fraud. If it is, every delinquent debtor would be guilty of fraud. The removal and sale of the timber by Stone and Gates did

not, in the circumstances portrayed by this record, constitute wrongful waste. The very fact that Mary E. Clerc received the full balance of the purchase price for the property conveyed through the operation of the vendor's lien suit is ample evidence to us that the removal of the timber did not diminish the security to Mary E. Clerc's harm. We simply say, in view of this record, that Mary E. Clerc, having made her election upon the breach of the contract, this Court cannot set aside such election, and especially after the lapse of many years and undertake to make an election for her.

The appellants, The A. M. Carson Store Company and others, predicate their appeal on the premise that the interest in the funds in question became their property by virtue of the store company's acquisition of the title to the land through a vendor's lien suit. Such a position, in our opinion, would be maintainable only in the event that the covenant of Mary E. Clerc ran with the land. As heretofore suggested, this Court on former Appeal No. 9471 held that the Mary E. Clerc deed conveying the ninety-four-acre tract and excepting the oil and gas, created a severance between the surface and the oil and gas. The deed conveyed only the surface of the land itself and the vendor's lien reserved therein was solely for the purpose of securing the purchase price of the property conveyed, and not the oil and gas excepted. The holding of this Court on Appeal No. 9471 is the law of the case and will not be disturbed on this appeal. "The decree of this Court, upon a question decided by the trial court, is final, and the questions involved and adjudicated on a former appeal generally cannot be reviewed on the second appeal. An exception to this rule is stated in Syl. 7, *Pennington* v. *Gillaspie*, 66 W. Va. 643, 66 S. E. 1009". *William C. Atwater & Co., Inc.* v. *Fall River Pocahontas Collieries Co.*, 119 W. Va. 549, Pt. 1 Syl., 195 S. E. 99.

We are of the opinion that the final decree entered by the circuit court on remand should be affirmed.

*Affirmed.*

Fox and Lovins, Judges, dissenting:

We are unable to concur in the opinion of the majority in these causes. As stated in that opinion, these causes have been heretofore considered by this Court in Appeals Nos. 9471 and 9472. We are presently concerned with Appeal No. 9471, reported in 126 W. Va. 395, 28 S. E. 2d 607. In that case we dissented from the majority decision, believing that the covenant there considered was one running with the land and enforceable by the present owners of the ninety-four acres, and not a personal covenant in favor of the grantees in the deed from Mary E. Clerc to Stone, Gates and Rogers, dated November 22, 1899, or their distributees. The reasons for our dissent are therein set out at some length, and need not be repeated. Suffice it to say that in our opinion the fund in controversy legally and equitably belongs to The A. M. Carson Store Company, Waid E. Carson, and Bessie Staats, who are shown to be the owners of the ninety-four acres, or at least are entitled to the right growing out of the covenant in question, and who, notwithstanding the former decision against them, still assert their claim thereto under a somewhat different theory from that advanced on the former appeal.

But we are met with the contention that the former decision is binding on this Court on this appeal, is the law of the case, and may not be departed from. As a general proposition, this is true; but there are exceptions to the rule, one of which is well stated in *Pennington* v. *Gillaspie*, 66 W. Va. 643, Pt. 7 Syl., 66 S. E. 1009, wherein this Court said:

> "It is a general rule, with few, if any exceptions, that a matter decided on appeal becomes, in effect, *res judicata* in that case; or, as it is frequently expressed, it *become* the law of that case in all subsequent proceedings; but when on a second appeal or writ of error it appears that the position of the parties has not been changed, or their rights injuriously affected by an erroneous ruling of the appellate court on the first hearing, and that no injustice

> or hardship would result from overruling the
> former decision, and it becomes necessary to
> reverse the case for other errors, the appellate
> court may correct its ruling on the former ap-
> peal or writ of error, and direct the lower
> court on new trial to disregard the first ruling."

*Highland* v. *Davis*, 121 W. Va. 524, 528, 6 S.E. 2d 922.

The exception above noted in the *Pennington* case has been recognized in many cases. See *Rash* v. *Railway Company*, 122 W. Va. 688, 692, 12 S.E. 2d 501. Under the *Pennington* decision, if we find the trial court in error in decreeing a part of the fund in question to the distributees of J. M. Stone in preference to the claim of Adele Clerc Gardner, sole distributee of Mary E. Clerc, and we should reverse that decree, then under the conditions laid down in that case we would, in our opinion, be warranted in correcting the opinion rendered in Appeal No. 9471. However, the majority of the Court is unwilling to take this course.

In our opinion the fund in question is decreed to those who, among all the parties and claimants involved in this litigation are least entitled thereto. Stone, Gates and Rogers defaulted in every undertaking assumed by them in the transaction out of which this litigation arises. They agreed to pay to Mary E. Clerc the purchase money for the ninety-four acres of land she conveyed to them, but failed to do so; they denuded the land of its timber; and sold said land burdened with the debt and lien which it was their duty and obligation to discharge. He who comes into a court of equity must come with clean hands, and we think no one can say that the prevailing claimants to the fund in question can fairly claim to have discharged their obligation in such a way as to entitle them to that classification. So far as we can observe from the record, all other claimants have fully met the requirements entailed upon them, and each and all of them are denied relief, and those least entitled to consideration are favored and enriched. It may be said that Mary E. Clerc has been paid the purchase

money for the ninety-four acres she conveyed. True, in the vendor's lien suit she was, no doubt with some expense and trouble, able by a sale of the surface of the ninety-four acres to secure the payment of the purchase money due her; but according to the opinion in Appeal No. 9471, the vendor's lien suit was ignored. It was there said: "We do not deem it requisite to inquire of the effect upon the covenant of the vendor's suit and proceedings in the bankruptcy court." *McIntosh* v. *Vail*, supra, page 406. And in other parts of the opinion the fact that there was no connection between the surface of the land to which the vendor's lien suit related and the oil and gas out of which the covenant arises was stressed. Now that vendor's lien suit and the sale therein made are utilized to support the claim of the Stone and Gates distributees.

We do not believe that Adele Clerc Gardner, the sole distributee of Mary E. Clerc is entitled to the fund in litigation; but we think she has a claim thereto superior in right to the claims of the distributees of Stone and Gates. If we could do so, we would under the rule announced in the *Pennington* case, reconsider the opinion in Appeal No. 9471, and award the fund to The A. M. Carson Store Company, Waid E. Carson, and Bessie E. Staats. Failing in this we would award it to Adele Clerc Gardner, as having a right to defend any suit or action against her on the part of the Stone and Gates distributees.

As stated above, we believe that in this suit, in a court of equity, a substantial sum of money has been awarded to those who have no legal, moral or equitable right thereto, and for that reason we dissent.