# CHARLESTON.

## POLINO v. KECK.

### Submitted April 17, 1917.   Decided May 8, 1917.

1. CONTRACTS—*Breach—Declaration—Election of Remedies.*

    The declaration in this case alleging a breach by defendant of a contract for hauling, by discharging plaintiff and refusing to permit him to complete the contract, and seeking to recover the profits which he would have realized from performance of the contract on his part, and averring his ability and willingness to do so, is not bad on demurrer for failure to show an election to treat the contract as rescinded, or kept alive, or as ended for all purposes, in accordance with the rule laid down in *Bare* v. *Victoria Coal & Coke Co.,* 73 W. Va. 632. (p. 430).

2. DAMAGES—*Breach—Profits—Proof.*

    A contractor who sues for the profits on his contract, which he was prevented from fulfilling by his employer, without fault on his part, is entitled to recover the full consideration for such con-

tract, less the expense of fulfilling the same. In such action he is not obliged to prove such profits with absolute certainty, but with such reasonable certainty only as will satisfy the jury of the reasonableness of his demand or estimate. (p. 430).

3.  SAME—*Measure—Breach of Contract.*

Point 5 of the syllabus in *Bare* v. *Victoria Coal & Coke Co.*, 73 W. Va. 632, re-affirmed and applied to the facts in this case. (p. 431).

4.  EVIDENCE—*Parol Evidence—Receipt.*

A receipt for money is prima facie evidence only of the facts recited therein, and like other receipts is subject to explanation or contradiction by extraneous oral evidence. (p. 435).

5.  TRIAL—*Requested Instructions—Given Instructions.*

The rejection of instructions to the jury fully covered by other instructions given does not constitute reversible error. (p. 435).

6.  CONTRACTS—*Action for Breach—Evidence.*

A contract other than the one sued upon but which is referred to therein and constitutes the basis of the contract on which the action is predicated, and controls to some extent the rights of the parties thereto, is properly admitted in evidence on the trial of such action. (p. 436).

Error to Circuit Court, Marion County.

Action of assumpsit by Samuel Polino against C. I. Keck, dealing, etc.  Demurrer to declaration overruled, and defendant brings error.

*Judgment affirmed.*

*L. V. Keck* and *W. S. Meredith,* for plaintiff in error.

*Frank R. Amos* and *Harry Shaw,* for defendant in error.

MILLER, JUDGE:

The declaration in assumpsit, by setting the same out in full therein, averred a contract between plaintiff and defendant, with mutual promises and undertakings, and whereby for the consideration of thirty cents per cubic yard to be paid plaintiff by defendant, as provided therein, plaintiff agreed to supply sufficient teams and to haul from the barges or flats of the defendant to the site of the construction work all the sand and gravel that would be required each day by

the Crossan Construction Company, contractor, in the work of constructing the Buckhannon and Northern Railroad, between certain stations thereof, and as called for in the contract between defendant and said construction company, and referred to in the contract declared on, said hauling to commence on the 8th day of May, 1914. And in addition to the price to be paid by defendant therefor, that defendant thereby stipulated and agreed on his part, to keep sufficient sand and gravel at said barges or flats for the purposes aforesaid, and also to furnish an electric motor for the use of plaintiff in hauling said sand and gravel, plaintiff to furnish a competent man to operate the same and to pay him for his services, and for the price of the electricity consumed, not to exceed, however, ten dollars per month, and that defendant thereby also agreed to provide a convenient and suitable place for the teams to move said sand and gravel along said construction work for ingress and egress of the teams, as provided in the contract between him and said construction company.

And by way of averring performance of said contract by plaintiff and breaches thereof by defendant, it is further alleged that plaintiff had always from the time of making said contract performed and fulfilled the same in all things required to be done on his part, that on the day appointed by said contract and at great expense he provided all teams, wagons, and other materials necessary and entered upon and commenced said work, and did perform .the same in part by hauling and delivering about three hundred and fifty cubic yards of said sand and gravel to the satisfaction of defendant, and had always thereafter been ready and willing to perform and complete the hauling of said sand and gravel, as required by said agreement, and of which defendant had notice. Nevertheless, as it is further averred, defendant, .contriving and wrongfully intending to injure plaintiff did not and would not perform the said agreement, promises and undertakings on his part, but craftily and subtly deceived plaintiff in that he did not and would not keep sufficient sand and gravel at said barges or flats to keep said teams busily engaged or to meet the demands of the said

Crossan Construction Company, but on the contrary wholly neglected and refused to do so. And it is also averred that in further disregard of his said promises and undertakings defendant afterwards, to-wit, on May 14, 1914, did not and would not permit or suffer plaintiff to proceed with and to complete said work, and then and there wholly hindered and prevented him from so doing, and then and there wrongfully discharged plaintiff from any further performance or completion of said agreement, whereby plaintiff had lost and been deprived of the profits and advantages which he otherwise might and would have derived and acquired from the completion of said work in accordance with said contract. He further averred that there remained to be hauled approximately forty thousand cubic yards of said sand and gravel, his profits from hauling which would have been approximately nine thousand five hundred dollars, and of all which plaintiff by the action of defendant had been deprived, wherefore, he sued, &c.

The judgment below overruling defendant's demurrer to the declaration is relied on here as error calling for reversal. Several points are urged. (1) That it is not disclosed how plaintiff proposed to treat the contract, (a) whether as rescinded, and to recover on the quantum meruit for the work done, (b) or as kept alive for the benefit of both parties, and himself ready and able to perform, and at the end of the time for completion of the contract to recover under the contract, or, (c) to treat the breach or breaches of the contract by defendant as putting an end to it for all purposes of performance and to sue for the profits he would have realized if he had not been prevented from performing it; (2) that it charges a violation of the contract between the Crossan Construction Company and defendant to which plaintiff was not a party, wherefore multifarious; (3) that it avers a discharge of plaintiff by defendant from performance or completion of the contract when the fact is plaintiff was not employed by defendant, that the breaches are not positively averred but by way of recital only, that it is alleged that "defendant did not keep sufficient sand and gravel at said barges or flats to keep the said teams busily engaged",

and furthermore that defendant "discharged the said plaintiff from any further performance or completion of said agreement", both of which breaches could not concur, wherefore they are inconsistent and the declaration subject to demurrer; (4) that the declaration is indefinite in that it does not aver wherein defendant prevented or rendered plaintiff unable to carry on the contract, nor wherein the damages sued for as profits would have amounted to the sum alleged, but only alleges the amount which would have been due had a certain amount of gravel and sand been used by said construction company. We see no substantial merit in either of these points. True the declaration is very inartistically drawn; such papers ought to be prepared with greater care and accuracy, and with some reference to approved forms.

On the first point it is quite clear from the averments that plaintiff did elect to treat the contract as repudiated and at an end for all purposes of performance and to sue for profits, in accordance with the rule laid down in *Bare* v. *Victoria Coal & Coke Co.,* 73 W. Va. 632. True, as stated in point 4, there is an averment of failure on defendant's part to keep sufficient sand and gravel at the barges or flats, but this was in anticipation perhaps of the defense that plaintiff did not as provided by the contract haul all the sand and gravel required each day in the work of constructing said railroad, and as averring one of the means employed by defendant to prevent him from carrying out his contract. The main averment on which plaintiff relies is that defendant discharged him and would not permit or suffer him to proceed with the work of completing the contract. We think these general averments sufficient within the rule of *Bare* v. *Victoria Coal & Coke Co.,* point 1 of the syllabus, *supra,* to save the declaration from attack by demurrer and to put the demurrant on his defense of pleading to the issue.

The other points of demurrer are sufficiently covered by what has been said upon the first point more or less involved therein. Besides, they are extremely technical and have no substantial merit therein.

The giving and refusing of instructions to the jury is especially relied on for reversal. At the instance of plain-

tiff the court gave six instructions, which were all objected
to and the points saved by a bill of exceptions. The most gen-
eral objection to these instructions is that, if propounding
good law, they are abstract and with no evidence upon which
to predicate the facts assumed therein. The first instruc-
tion, though not in the exact language, is substantially the
same as one on the same subject, approved in *Smith* v. *Coal
Company*, 66 W. Va. 599, and supported by *Barrett* v. *Coal
& Coke Co.*, 55 W. Va. 395, points 6 and 7 of the syllabus.
In substance this instruction told the jury as matter of law
that a contractor who sues for the profits on his contract
which he was prevented from fulfilling by his employer, with-
out fault on his part, is entitled to recover the full consid-
eration for such contract, less the expense of fulfilling the
same, and that in such case he is not bound to prove what his
profits would have been with absolute certainty, but only
with such reasonable certainty as will satisfy the jury as to
the reasonableness of his demand or estimate, and that re-
mote or doubtful contingencies are insufficient to destroy the
reasonable certainty of such demand. In form this instruc-
tion was clearly unassailable; whether supported by the evi-
dence, will be considered later in connection with instruc-
tion number two.

Instruction number two, in substance is that if the jury
find from the evidence that plaintiff and defendant entered
into the contract in writing shown in evidence, and whereby
plaintiff was to haul the sand and gravel therein mentioned,
and was to be paid therefor by defendant at the rate of thirty
cents per cubic yard, and that plaintiff commenced the per-
formance thereof and continued to haul said sand and gravel
for the period of three days in the manner provided in the
contract, and that on the fourth day he offered to proceed
therewith and in the manner and as required by said contract,
when he was prevented by defendant from further perform-
ance and from completion of said contract, and was dis-
charged by him therefrom, such action on the part of defend-
ant constituted a breach of the contract by him, and an action
thereby accrued to plaintiff entitling him to recover against
defendant the difference between what it would have cost him

to have hauled said sand and gravel as required by the con-
tract and the price stipulated in the contract to be paid him
therefor.    Surely this instruction embodies a correct legal
proposition and is supported by our holding in *Bare* v. *Vic-
toria Coal & Coke Company, supra,* point 5 of the syllabus.

But is there any evidence in the case on which to predi-
cate these two instructions?   It is contended on behalf of de-
fendant that there is not.   The verdict of the jury amounted
to a finding that there was such evidence.   On the first in-
struction the amount of damages found by the jury, $766.00,
was substantially the sum proven by the defendant that
plaintiff might reasonably have made by completing the con-
tract, based on the quantity of sand and gravel which he ad-
mitted was actually consumed in the construction of the sec-
tion of the railway referred to in the contract, at the rate
of ten cents per cubic yard profit.   Plaintiff undertook to
prove a much larger sum, but the jury were evidently quite
conservative in their estimate, and seem to have limited their
verdict to the sum proven by defendant's evidence.   So we
think there can be nothing in the contention that the evidence
did not warrant the first instruction.

But what of instruction number two?   Was there evidence
justifying it?   Defendant's instructions numbered five, six,
thirteen, and fifteen, given, covered in all phases the conten-
tions thereon and propositions relied on by him, so that the
law of the case was fully and clearly given in these charges
to the jury.   It is fully proven and defendant admits that
he discharged plaintiff and would not permit him after the
third day to proceed with the performance of the contract.
He undertook to justify his action on the ground that plain-
tiff did not supply a sufficient number of teams and wagons
and of the proper kind to perform and comply with the con-
tract upon his part, and as called for by the contract between
him and the construction company, and that beginning with
the first day and continuing on the second and third day,
complaint was made by the Crossan Construction Company,
the last complaint being in the form of a notice in writing to
the effect that the delivery of the material was not at all sat-
isfactory and unless other arrangements in regard to teams

should be made it would be necessary for them to cancel their contract with him. Plaintiff testified that he appeared on the day appointed by his contract with five good teams and wagons and with other equipment sufficient to have reasonably complied with his contract; that he was delayed to some extent by the failure of defendant to keep on hand a sufficient supply of sand and gravel, and that the electric motor provided by him broke down, and was incapable of performing its work in the execution of the contract, and that defendant neglected to repair the same. Whose duty it was to make the repairs the contract did not provide. But in place of this motor plaintiff employed three other teams owned by the Crossan Construction Company, at the rate of fifty five cents per hour, for the hours each of said teams was employed, and there is nothing in the evidence to show that he was unwilling to continue to employ these teams, and all other teams that could have been gotten. It is conceded by the Crossan Construction Company that teams were difficult to be had, and it is fully proven by Donovan, general manager of the construction company, that some days one or two teams were adequate to supply the sand and gravel required by the construction company, while on other days ten or more teams would be required. The contract between the Crossan Construction Company and defendant required the construction company to furnish a suitable place, commonly called a "stock ground", abutting the proposed construction works, commonly called the "site", whenever practicable, so that the sand and gravel might be transported directly from the barges or flats of defendant to this "stock ground" or "site". This being a part of the contract between defendant and the construction company and by which plaintiff was to be governed in the performance of his contract with defendant, the plaintiff had a right to rely upon the construction company providing for such "stock grounds". The excuse given by the construction company for failing to provide this stock ground is that it was impracticable to do so. Plaintiff proves that if such stock ground had been provided he could have furnished with his equipment, from day to day, sand and gravel on the ground sufficient to satisfy all requirements of

the construction company, but that no provision of any kind was made for storage of sand and gravel, except in the narrow street between the street railway tracks and the curb, which was wholly inadequate. Moreover, there is evidence tending to show that the complaints lodged against plaintiff by defendant and the construction company were unreasonable and captious and were the result of a collusion between them to squeeze plaintiff out of a good contract and appropriate the profits to themselves. The evidence tends to show that defendant and the construction company had learned by hauling sand and gravel for two or three days preceding the beginning of plaintiff's contract that there was a good profit in the contract, and that their purpose was to get rid of him so as to reap the profit themselves. Moreover, the construction company, through Donovan, admits that after Keck discharged plaintiff and undertook to execute the contract himself he hired the construction company's teams and other teams; that Keck did not thereafter supply sufficient sand and gravel for each day, that teams were not to be gotten, and that he had cause to complain of Keck, in fact he says you will always have cause for such complaints on public works. He says he did not have as much cause for complaint after Keck took charge as while Polino was there.

Without further detailing the evidence it is sufficient to say we are satisfied plaintiff was honestly disposed to faithfully perform his contract, and was as well equipped to perform it as it was performed afterwards by defendant, and as was really contemplated considering the circumstances and conditions at the works; and it was for the jury to say under all the facts and circumstances whether defendant was justified in breaching the contract and depriving the plaintiff of an opportunity to execute the same and of the profits to be derived therefrom. So we conclude that there was evidence justifying the plaintiff's instruction number two complained of.

Plaintiff's instruction number three told the jury in substance that he was not seeking to recover anything for work actually performed by him under the contract, but damages for being so prevented by defendant from completing the

contract. This instruction was evidently intended to prevent the jury from being misled by some argument or theory presented on the trial respecting the ground on which plaintiff sought recovery. We perceive no reversible error in the giving of this instruction.

With respect to instruction number four, one of the defenses was that on the day of plaintiff's discharge defendant had paid him by check $83.40, with a memorandum on the face of the check, "in full of acts." Defendant's contention before the court and jury was that this constituted a settlement of all claims for damages or otherwise that the plaintiff might have against him. Plaintiff's claim was that this check simply covered the actual work done by him, less what was deducted for the teams of the Crossan Construction Company, and this, indeed, according to the evidence, was the actual fact. Plaintiff did not in terms undertake to release his claim for damages, and at all events he denies that such was the agreement. By instruction number four the jury was told that such check with the memorandum thereon was in the nature of a receipt and like other receipts was subject to explanation or contradiction by extraneous oral evidence. This is clearly the law respecting receipts, as many times decided. *Anderson* v. *Davis and Ould,* 55 W. Va. 434; *Art Co.* v. *Thacker,* 65 W. Va. 146.

The theory of the defendant respecting this check, that it included all claims for damages arising out of the contract, was fully covered by his instructions numbered two and ten, which also laid down the rule respecting the burden of proof in such cases. So the two theories were fully covered by instructions to the jury, and we cannot say that the verdict in favor of the plaintiff thereon was not supported by the proof. And what has been said in this connection with respect to plaintiff's instruction number four, and defendant's instructions on the same subject, applies also to plaintiff's instruction number five relating thereto.

Plaintiff's instruction number six relates to the burden of proof on the issues in the case and correctly states the law on this subject.

The next points of error relied upon for reversal relate to

defendant's instructions numbered three, four, seven, nine, and eleven, rejected. Of numbers three and four it may simply be said that they are fully covered by other instructions given; besides they are probably objectionable for ignoring plaintiff's theory that he was prevented by the defendant from performing his contract. Instruction number seven is fully covered by defendant's instruction number twelve, given. Instruction number nine is covered by defendant's instruction number ten; and number eleven, rejected, is substantially covered by instruction number thirteen, given. So we find no error justifying reversal in the giving and refusing of instructions.

Another point relied on is that the court permitted plaintiff, over defendant's objection, to introduce in evidence the contract between the defendant and Crossan Construction Company. As this contract was referred to in the contract between plaintiff and defendant, and the plaintiff was required by his contract to furnish the sand and gravel as required by that contract, and one of the provisions thereof relating to "stock ground" or "site" was entitled to some probative value in the disposition of the case, we can see no error in the admission of this contract, and we think plaintiff was entitled to have it go in evidence for such probative value as it was entitled to.

Lastly, it is complained that the court erred in overruling defendant's motion to set aside the verdict and award him a new trial. What has already been said in response to the other points of error constitutes sufficient ground for negativing this last point.

Our conclusion, therefore, is to affirm the judgment.

*Judgment affirmed.*