# CHARLESTON.

### HOLCOMBE *v.* LAUREL CREEK COAL COMPANY.

Submitted May 7, 1924. Decided May 20, 1924.

1. MASTER AND SERVANT—*Evidence of General Reduction of Wages Held Admissible in Miner's Suit for Back Pay.*

    Where one is employed as mine foreman for a coal company at a stated salary and three months later his salary is cut due to the fact that the mines are indefinitely closed down, and later the mines resume operations and plaintiff continues in the same capacity but at a reduced salary, and the contention of the plaintiff is that he was to receive back pay, when the mines resumed operations, for the difference between the salary paid, and the salary at which he was first employed, and the contention of the defendant is that the salary was a straight cut with no agreement to pay any back pay; evidence that other salaried men were cut at the same time and in the same proportion and that there was

    96 W. Va.

a general wage reduction throughout the field in which de-
fendant's mine was located, is proper and should be admitted
as tending to contradict the statement of the plaintiff that he
was to receive his back pay when the mines resumed opera-
tions, and to show the general policy of the defendant to
continue operations at a reduced cost. (p. 479).

2.   EVIDENCE—PAYMENT—*Receipt Merely Prima Facie Evidence of
Payment; Parol Evidence to Show Actual Facts Surrounding
Giving of Receipt admissible; Instruction Holding that Re-
ceipt Conclusive Except Where Fraud, Misrepresentation, or
Mistake Shown Held Too Narrow.*

A receipt is merely prima facie evidence that the amount
shown thereon has been paid, and parol evidence may be
introduced to show the actual facts and circumstances sur-
rounding the giving of the receipt, and any satisfactory ex-
planation thereof, and an instruction which holds it con-
clusive on its face, except where fraud, misrepresentation,
error or mistake is shown, is too narrow and should not be
given.   (p. 480).

Error to Circuit Court, Fayette County.

Action by George Holcombe against the Laurel Creek Coal
Company.   Judgment for plaintiff, and defendant brings
error.

*Reversed, and new trial awarded.*

*Dillon, Nuckolls & Mahan,* for plaintiff in error.
*Magee McClung,* for defendant in error.

McGINNIS, JUDGE:

This is an action of assumpsit instituted in the Circuit
Court of Fayette County in which the plaintiff seeks to re-
cover the balance which he alleges to be due him for wages
as mine foreman of the defendant for the months of November
and December, 1921, and January, February, March and
April, 1922.   From a judgment rendered in favor of the
plaintiff upon a verdict of a jury for $240.00 the defendant
prosecutes this writ of error.

The plaintiff, a mine foreman of something like 11 years
experience, immediately prior to August 1, 1921, was em-
ployed in such capacity by the Wood-Sullivan Coal Company;
about June 26, 1921, he had a talk with Will Lawton, super-

intendent of the defendant company, at the mine, which mine is located about four miles up Laurel Creek from Quinnimont, but failed to reach an agreement for his employment with him, and proceeded to Quinnimont and there entered into an agreement with George Lawton, General Manager of the defendant, with whom he agreed to enter the employment of said company as mine foreman at a salary of $220.00 per month; under this agreement he entered the service of the defedant at their mine on August 1, 1921. Plaintiff continued in the service of the defendant as mine foreman from August 1, 1921, to April 5, 1922.

The defendant claims that due to a depression of the coal market, it became necessary for it to shut down its mine on November 1, 1921, which it did and said mine remained shut down until January 1, 1922. There is a controversy here as to the agreement under which the plaintiff continued in the employ of the defendant after the mine was shut down. The plaintiff contends that he was to work on at a reduced wage during the depression and that he was to receive back pay for the balance as soon as the mines began full operation again. The defendant contends that it was a straight cut in salary and that there was no agreement about back pay, that the salary agreed upon by the plaintiff was the amount shown on his monthly statements and that there was no other agreement.

Plaintiff's testimony is to the effect that he was paid the full amount, $220.00, for the months of August, September and October, 1921; that he was notified about the first of November that his salary would be cut from $220.00 to $130.00 per month but says that the defendant's superintendent came to him and told him that they were hard up and didn't want to go in debt any more than was necessary and that they wanted him to remain with them, and would cut his salary but agreed that plaintiff was to receive back pay for the difference between the amounts as soon as the mine started up. In fact he says that he did not know that $130.00 was all the pay roll showed until his statement was issued for the first half of November, which statement was issued the last of November, and which showed $130.00 per month, and he received this amount for the months of No-

vember and December and signed receipts for the same, and without any further agreement or conversation, he found from his statement for the first half of January, 1922, received the last half of January, that he was receiving $200.00 per month, which amount was paid to him for the months of January, February and March, nothing being paid him for the work done in April.

The evidence of the superintendent corroborates that of the plaintiff as to the amount of salary that it was agreed at first he was to receive, also that it was paid to him for the first three months; he further testifies that the mine was closed down November 1, 1921, for an indefinite period and that they started some repair work, building and putting in a fan, and cleaning the mine and that the plaintiff's wages were cut to $130.00 and that there was no agreement whereby plaintiff was to receive any back pay; that the plaintiff worked for this amount during the months of November and December, 1921, during which time the plaintiff worked around the mine along with several other salaried men. The mines started up January 1, 1922, and continued in operation until the general strike called April 1, 1922, during this time the plaintiff received $200.00 per month. When the strike was called, the witness testified that he told plaintiff that the mine would be closed indefinitely and he could look for another job if he cared to; this the plaintiff did. Witness George Lawton, General Manager of the defendant, testified that he employed the plaintiff at the rate of $220.00 per month but that this was no permanent salary and that he ordered his salary cut when the mines were closed down November 1, 1921, from $220.00 to $130.00. His testimony along other lines is generally the same as that of the superintendent.

Witness Flint testified that the plaintiff came to him and told him that the salaries had been cut and that they wouldn't work so hard. He further testified that the occasion for talking about these matters arose over the fact that his salary statement for November showed a cut from $7.50 per day to $4.00 per day and that plaintiff told him that he had been cut and named two other salary men who had been cut and told witness that he had no kick coming.

Witness John Miller testified that he went to the plaintiff

about a cut in his salary which his statement showed and that the plaintiff told him that he, Cox, the bookkeeper, and the other salaried men had accepted a cut and the others would have to accept a cut too on account of the conditions prevailing.

The jury returned a verdict for the plaintiff for $240.00, the defendant moved the court to set aside the verdict, which motion was overruled and judgment entered on the verdict, and the defendant relies on the following errors in prosecuting this writ:

> "(a)    The rejection of evidence offered for the defendant.
> (b)    The failure to give defendant's instruction No. 3.
> (c)    Failure to set aside the verdict because contrary to the law and the evidence."

Defendant's first assignment of error is that the court improperly excluded the following testimony of its superintendent, Will Lawton, who after stating that the wages of the plaintiff were unconditionally reduced, offered to testify as follows:

> "Q.    I will ask you whether or not the company, when it closed November 1, 1921, *whether* any reduction of wages took place with those that continued to be employed?
> A.    They were all cut, the salaried men.
> Q.    Did the cut apply to all others who continued to work?
> A.    All other men, all salary men in the store. We closed the store, and they went to the mines.
> Q.    I understood you to say you did not run at all for the two months, what were these men doing whose wages you say you cut?
> A.    They were building fans, installing fans.
> Q.    Then I understand, you were doing something around the mine, but not operating the mine?
> A.    No."

After he had testified that when the mine started up on the first of January, and that plaintiff was paid $200.00 per month he was asked:

> "Q.    I would like to ask you why it was that he was

not given the same wages that he had formerly at $220.00 ?

A. Because the other men were reduced in wages, miners and all had taken a cut in wages.

Q. You made a statement with reference to reducing all wages at the mine when you started up in January, 1922; I will ask you whether that is true with reference to the entire New River field?

A. It was.

Q. I will ask you whether the wages of $200.00 per month paid Mr. Holcombe when the mine started January 1, 1922, was relatively as high as the wages of other monthly men and day men?

A. They were.''

Upon objection by the plaintiff to each of the foregoing questions and answers, the court sustained the objections and refused to allow the said questions and answers to be read to the jury.

George Lawton, General Manager of the defendant, was asked the following questions which, upon objection, he was not permitted to answer:

''Q. Mr. Lawton tell the jury what was the policy of your company in respect to cutting wages, including Mr. Holcombe's during the time you say you had closed your mine down?

''Q. State whether or not all the persons that your company employed during the month of November and December, including your bookkeeper, store manager and others, who worked as salary men, were reduced relatively to the boss (meaning the plaintiff) during the two months that you speak of, November and December, 1921?

The defendant vouched the record that if permitted to answer the witness would state that he had closed down the mine because the cost of production was greater than the price he could get for the coal, and that the company determined upon the policy of closing down until better prices could be obtained, and that upon condition that the salary men would all agree to a cut in wages, and that cut inaugurated for all salaried men and all who worked around the mine during the two months, relatively in proportion as the salary cut was made in Mr. Holcombe's wages.

Q. For the purpose of the record, I will ask you whether his salary of $200.00 was in relative proportion to the cut made in all other wages at that time?

The defendant vouched the record that the witness, if permitted to answer, would state that a reduction was not only made in all salaried men and day men, but also in the mine rate, and that such reductions were relatively in proportion to what the men had formerly been paid."

Upon objection by the plaintiff, none of the above testimony was allowed to go to the jury.

We think the court erred in refusing to let this evidence go to the jury. The question which determines this whole case is whether or not the defendant agreed to pay this back salary as contended by the plaintiff? The defendant based its defense upon the fact that it had made a straight cut in the wages of the defendant, that there was no agreement whereby the plaintiff was to receive anything other than the amount shown on his statement; that it had to close down its mines November 1, 1921, due to the fact that there was a depression in the coal business. In support of this defense evidence was introduced to the effect that it did not want to entirely lose its organization and all of its monthly employees were asked to stay if they would work for reduced wages; that plaintiff was notified of these conditions and circumstances along with all of the other salaried men; that the defendant reduced plaintiff's salary because of a general scheme upon their part to retain all of the salaried men as well as to reduce the cost of operation as much as possible during the slack time; that the salary cut was a general thing and that the plaintiff's salary cut was in the same proportion as all of the other men retained. The defendant had a general policy in closing down its mine and in starting it up and that policy was while closed down to keep its organization together at a minimum expense and when it started to keep the cost of production down and in order to do so reduced the salaries of all employees. The fact that the wages were cut throughout the New River field, the field in which the defendant's mine is located, would also tend to show that the scheme to cut wages was general.

The testimony of Will Lawton and George Lawton which was excluded by the court had a strong tendency to show that the contention of the plaintiff that he was to receive his

96 W. Va.

back salary and for which he here sues is not well founded on fact. If the jury had been allowed to hear this testimony their verdict might have been different. At the time this reduction of wages first took place, the miners were not working, but according to this testimony the pay of all the salaried men was reduced, and when the mine resumed operation, the wages of all the employes were reduced and in each case the salary of the plaintiff was relatively as high as other monthly men and day men. There are no reasons given in the evidence tending to show why this plaintiff should receive superior consideration to the other employees. No reason given by the plaintiff or testified to by any witness why he should be singled out and given different treatment than they. We think this rejected testimony is of strong probative value and the court erred in refusing to allow it to go to the jury.

> "All facts having a rational probative value are admissible unless some specific rule forbids." 1 Wigmore on Evidence, sec. 10.
> "Tendency of evidence, in an appreciable degree to sustain a material issue of fact, makes it admissible and justifies instructions founded upon it." *Lyons* v. *Fairmont Real Estate Company,* 71 W. Va. 754.

This rule is substantially enunciated in the following cases: *Gibbard* v. *Evans,* 87 W. Va. 650; *Bank of Pensboro* v. *Barker,* 75 W. Va. 244; *Polina* v. *Peck,* 80 W. Va. 426; *Bowman* v. *Bank,* 115 Va. 463.

Further error is assigned to the failure of the court to give instruction number 3 offered by the defendant, which is as follows:

> "The court further instructs the jury that where a person has accepted payment and given a receipt in full or signed a check reciting that it is in full settlement unless the person who signs the same is able to show that he was induced to sign such check or receipt by misrepresentation or fraud or that it was signed through error or mistake."

We do not think the court below erred in refusing to give this instruction because it would limit the proof of the plaintiff to fraud, error or mistake, or misrepresentation, while as a matter of fact this is not the law, a receipt is merely prima

facie evidence that the amount shown thereon was actually paid and parol evidence may be introduced to show the actual facts and circumstances surrounding the giving of the receipt and an explanation thereof.

> "A receipt is only prima facie evidence and may be contradicted or explained by oral testimony."
> "Although receipt of a valuable consideration is acknowledged it is not conclusive evidence that the consideration was actually paid; it is prima facie evidence and may be overcome by parol proof to the contrary. A receipt is not a contract, precluding oral evidence to contradict or vary its terms." *Columbia Onyx Marble Company* v. *Miller, et al.,* 74 W. Va. 686; citing *Dunlap* v. *Shanklin,* 10 W. Va. 662; *Cushwa* v. *Improvement L. & B. Assn.,* 45 W. Va. 490.

For the reasons assigned above, the judgment of the lower court will be reversed, the verdict of the jury set aside and the cause remanded to the Circuit Court of Fayette County for a new trial.

*Reversed, and new trial awarded.*